51 CCPA
**Application of Kemper M. HAMMELL,**
**Patent Appeal No. 7120.**

United States Court of Customs and Patent Appeals.
Feb. 6, 1964.

William Hintze, Harrisburg, Pa., Roger L. Hansel, Washington, D. C. (Truman S. Safford, Curtis, Morris & Safford, New York City Marshall M. Holcombe, Harrisburg, Pa., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and AL-MOND, Judges.

ALMOND, Judge.

Hammell appeals from a decision of the Board of Appeals affirming the examiner's refusal of claims 1 and 2 of appellant's patent application [1] for "Electrical Connection." No claims were allowed.

The aforementioned application is a continuation-in-part of appellant's copending application.[2]

Appellant's specification discloses an alleged improvement in the art of cold-crimping of wrapping a U-shaped partially performed ferrule around a conductor wire in mechanical and electrical contact.

The specification further discloses that in many cases the prior art connections are elliptical in cross-section, but that "a substantially better and especially a stronger connection, which will retain its low electrical resistance better over very long and severe usage, results when the connection is forged to a more nearly square cross-section." In addition, appellant found that

"* * * a still more secure connection is made if projections are provided in the bottom die, especially with transverse ridges of sufficient height and width to indent the ferrule wall inward into the conductor. This provides a further mechanical key against pull-out and also provides an area of very severe extrusion wherein the longitudinal flow of the metal assures the exposure of fresh metal at the contact surfaces, and this being well within the area of the crimp already described, it is, for reasons set forth, protected against entry of moisture or corrosive atmosphere which would allow the surfaces to be re-oxidized or otherwise corroded before they are fully united or forged together."

The drawings illustrate the improvements:

Figure 5 discloses die crimping said connector ferrule 12 about a wire 17, to forge, with both lateral and longitudinal extrusions, a solid solderless connection having a generally rectangular cross-section, with the free ends of the U curled inwardly and forced down against the wire to leave a longitudinal groove in the top of the connection.

Figs. 5 and 6 show transverse ribs or keys which are die-shaped in the bottom wall of the connection.

1. Serial No. 703,624 filed December 18, 1957.

2. Serial No. 311,265 filed Sept. 24, 1952.

Claim 1 is illustrative:

"1. The method of making electrical connection between a conductor and a connector of malleable sheet metal having a ferrule-forming portion U-shaped in cross section with the sides of the U flared to an inside diameter greater than that of the conductor, including the steps of disposing a longitudinal section of the conductor along the channel of the U, curling together the ends of the projecting sides of the U and driving them against the conductor, and forging at least a portion of the resulting ferrule and conductor to generally rectangular configuration to conform the conductor by radial deformation and longitudinal extrusion to the inside surface of the ferrule, the forging including displacing at least one transverse, side-to-side portion of metal of the bottom of the resulting rectangular connection relative to the general plane of the ferrule bottom to distort the linearity of the bottom side corners of the connector and to key the conductor in the ferrule and to alter materially the cross-sectional dimension of the rectangular connection in the region of the displaced portion relative to the regions adjacent thereto."

The prior art references of record relied on are:

| | | |
|---|---|---|
| Pierce | 2,692,422 | Oct. 26, 1954 |
| Macy | 2,639,754 | May 26, 1953 |
| Wells | 2,795,769 | June 11, 1957 |
| (Filed October 24, 1947) | | |

Societe Generale D'Equipements (France)
1,033,433       April 1, 1953

---

Pierce discloses die shaping a U-shaped ferrule portion enclosing a wire, to forge a solid connection of generally rectangular cross-section. The open ends of the U are curled inwardly leaving a longitudinal groove in the top of the connection. Appellant describes Pierce as disclosing a connection that is the result of a process similar in basic respects to what is taught by appellant.

Wells discloses that a U-shaped ferrule may be used as a connector, resulting in a crimped connection. Or, a closed cylindrical ferrule may be used as a terminal connector enclosing a wire to forge a connection of flattened shape of elliptical cross-section with transverse grooves at least in the top portion thereof.

Macy discloses the die shaping of a closed cylindrical connector ferrule enclosing a wire, to forge a connection of flattened shape of elliptical cross-section with transverse grooves in the top and bottom and extending through the side edges thereof.

The French patent discloses die shaping of a U-shaped connector ferrule enclosing a wire, to forge a solid connection of generally rectangular cross-section, with the open ends of the U curled inwardly into the wire and with transverse grooves in the bottom or back of the connection for improvement of "traction resistance."

The board affirmed the examiner's rejection of the appealed claims as unpatentable over Pierce in view of Macy, Wells and the French patent.

It is clear that the appealed claims are, in substance, directed to shaping the U cross-section of ferrule 10 about wire 17 to form a solid connection generally rectangular in cross-section with the open ends of the U curled into the wire and forming edge to edge transverse grooves or ribs in the bottom surface of the connection. Pierce and the French patent make the same disclosure of inward curling of the sides of the U in the same manner as recited in the claims.

In addition, the French patent discloses that the impressions are produced "in the dorsal part of the strip at right angles with each pair of fins" which impressions produce a transverse rib or groove at the back of the strip "so as to bring about a certain separation of wires between the two portions tightened by the fins," which "is very advantageous for the traction resistance of the unit." Macy discloses a conductor and terminal plug crimped into interlocking relationship to each other with cross-wise edge to edge grooves in the upper and lower faces of a flattened closed ferrule with elliptically shaped cross-section. Macy describes a method to "effect the zig-zag crimping of the material at the same time extruding metal laterally against the conductor and thus forming the ferrule into a tight embrace of the conductor and its locking in this condition to insure a permanent substantially air- and watertight interengagement of the parts and a good electrically conductive contact." Macy further discloses, broadly, a solderless method of die-press crimping so that a permanent set of the ferrule and the conductor "in their new relation to each other is obtained," and also "a lateral extrusion of the ferrule material toward the corrugated edges, which further assures against 'spring-back' of the ferrule" augmented by "interlocking and clean metal-to-metal contact * * * brought about by extrusion cold flow of the metal under pressure exerted by the dies," which "extrusion causes a lengthening of the ferrule during crimping * * *."

This analysis of the Macy disclosures is convincing of the soundness of the argument of the solicitor that:

"* * * In view of the disclosure of Macy, alone, it would be suggested to one skilled in the art to die shape with drastic extrusion or forging at any point in such connection where spring back is detected, with corresponding undesirable lack of contact between the wire and the ferrule portion. Moreover, it would be suggested to one skilled in the art to apply the specific edge to edge groove and the broad extrusion or forging principles of Macy to the bottom face of the specific connections of generally rectangular shape produced with U-shaped ferrule portions as disclosed in the Pierce patent and in the French patent (such connections having, of course, a longitudinal groove in their top face), thus to produce the substance of the appealed claims."

We have searchingly examined appellant's application and fail to find therein a disclosure of a problem or claimed solution that would not be obvious to one skilled in the art, at the time of appellant's claimed invention, with the cited references before him.

Appellant's assertion in his brief that he discovered an "added residual springback tendency remains in the region of the right angular bends at the bottom corner of the crimp" has no basic predicate by way of disclosure in the specification nor by any evidence of record. We find no disclosure in the specification nor evidence of record to support the statement in appellant's brief "that the resistance of the ferrule to releasing its grip on the conductor wire is weakest at the bottom side corners."

We find no reversible error in the decision of the board holding that the claims on appeal are unpatentable over the cited prior art. We affirm the decision of the Board of Appeals.

Affirmed.